OPINION
{¶ 1} Appellant Sherry Stephens appeals a change of child custody decision in the Stark County Court of Common Pleas, Juvenile Division, in favor of Appellee Anthony Bertin. The relevant facts leading to this appeal are as follows.
 {¶ 2} Appellant is the mother of twin children, Jala and Jadon Stephens, born in July 1999. On January 26, 2001, subsequent to genetic testing, appellee was established as the children's father via an order from the trial court. On March 28, 2001, the court named appellant residential parent of both children.
 {¶ 3} Appellee-father filed a motion to reallocate parental rights and responsibilities on April 9, 2003. An initial ruling on said motion was subsequently vacated, and a family court magistrate heard evidence on the matter on February 9-10, April 15, and May 20 and 27, 2005. On August 19, 2005, the magistrate issued a decision designating appellee as the residential and custodial parent, therein incorporating appellee's proposed findings of fact and conclusions of law. Appellant filed an objection to the decision of the magistrate on September 1, 2005. On January 17, 2006, following a hearing, the trial court approved and adopted the decision of the magistrate.
 {¶ 4} Appellant filed a notice of appeal on February 17, 2006.[1]
She herein raises the following five Assignments of Error:
 {¶ 5} "I. THE TRIAL COURT'S FINDINGS THAT BASED ON 3109.04(E) THAT (SIC) THERE WERE CIRCUMSTANCES THAT WARRANTED A CHANGE IN CUSTODY WAS (SIC) UNREASONABLE, ARBITRARY AND UNCONSCIONABLE.
 {¶ 6} "II. THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT CONTINUOUSLY ALLOWED EVIDENCE TO BE PRESENT (SIC) THAT VIOLATES THE FEDERAL RULES OF EVIDENCE, WHICH CONSTITUTES AN ABUSE OF DISCRETION.
 {¶ 7} "III. THE TRIAL COURT ABUSED ITS DISCRETION IN NOT CONSIDERING OTHER VALID FACTORS CONTAINED IN O.R.C. 3109.049 (SIC) WHEN RENDERING ITS FINDINGS OF CHANGE IN CIRCUMSTANCES.
 {¶ 8} "IV. THE TRIAL COURT ABUSED ITS DISCRETION WHEN AT THE CLOSE OF APPELLANT'S CASE IT RULED TO DENY DR. BERTIN'S MOTION TO REALLOCATE PARENTAL RIGHTS AND RESPONSIBILITIES WITHOUT VACATING THAT RULING LATER, PROCEEDED TO TAKE TESTIMONY AND DID NOT ALLOW APPELLANT TO PRESENT HER OWN WITNESSES.
 {¶ 9} "V. THE TRIAL COURT ERRED WHEN IT DID NOT ALLOW APPELLANT TO PRESENT HER WITNESSES AT TRIAL."
 I. {¶ 10} In her First Assignment of Error, appellant argues the trial court committed reversible error in finding a change in circumstances under R.C. 3109.04(E) for purposes of modifying custody. We disagree.
 {¶ 11} As an appellate court, we review a trial court's decision allocating parental rights and responsibilities under a standard of review of abuse of discretion. Miller v. Miller (1988),37 Ohio St.3d 71, 74, 523 N .E.2d 846. An abuse of discretion occurs when the trial court's judgment is unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 12} R.C. 3109.04(E)(1)(a) reads in pertinent part as follows: "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
 {¶ 13} "(i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.
 {¶ 14} "(ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.
 {¶ 15} "(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."
 {¶ 16} The trial court in the case sub judice found the following, via incorporation by reference, as to change in circumstances:
 {¶ 17} "4. This court finds the mother has severely interfered with the father's visitation with his children since March 2001.
 {¶ 18} "5. This court finds the mother deliberately has interfered with communication between the father and his children.
 {¶ 19} "6. This court finds the mother has continually conducted herself and her comments so as to surround the children with an atmosphere of animosity toward the father and his wife.
 {¶ 20} "7. This court finds the mother has continually failed to adhere to the companionship orders requiring joint decision making concerning the children and requiring the father to have equal access to all matters concerning the children.
 {¶ 21} "8. The mother has wrongfully accused Dr. Bertin of sexually assaulting his daughter and she has continued to assert problems about the issue to anyone who will listen despite no evidence by any medical practitioner that a problem has ever existed.
 {¶ 22} "9. The mother has discussed adult topics in front of the children and she continually speaks negatively about the father and his wife to the children.
 {¶ 23} "10. The father has demonstrated there is a sufficient change of circumstances warranting a reallocation of parental rights and responsibilities of the children from the mother to the father (SeeFetty vs. Fetty attached hereto). Although there is no requirement that a change of circumstances be substantial in order to modify custody from her this court find (sic) specifically there has been a substantial change of circumstances.
 {¶ 24} "11. This court concludes there are substantial advantages to the children which outweigh any harm caused by the designation of father as residential parent." Findings of Fact and Conclusions of Law at 24-25.
 {¶ 25} We note appellant's concise objection to the magistrate's decision makes no direct mention of the "change in circumstances" issue. Pursuant to Civ.R. 53, the objections to a magistrate's decision must be specific. North v. Murphy (March 9, 2001), Tuscarawas App. No. 2000AP050044. Furthermore, Civ.R. 53(D)(3)(b)(iv) provides that "* * * a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion * * * unless the party has objected to that finding or conclusion * * *." See, e.g., Stamatakis v.Robinson (January 27, 1997), Stark App. No. 1996CA00303. Nonetheless, in the interest of justice, we have reviewed the multi-volume transcript in this matter, and we are unpersuaded that the court's finding of change in circumstances was an abuse of discretion or an error of law.
 {¶ 26} Appellant's First Assignment of Error is overruled.
 III. {¶ 27} In her Third Assignment of Error, appellant argues the trial court failed to properly consider the "best interest" factors found in R.C. 3109.04(F)(1) in reaching its decision.[2] We disagree.
 {¶ 28} In determining the best interest of a child in matters addressing parental rights and responsibilities, R.C. 3109.04(F)(1) directs that " * * * the court shall consider all relevant factors, including, but not limited to:
 {¶ 29} "(a) The wishes of the child's parents regarding the child's care;
 {¶ 30} "(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 {¶ 31} "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 {¶ 32} "(d) The child's adjustment to the child's home, school, and community;
 {¶ 33} "(e) The mental and physical health of all persons involved in the situation;
 {¶ 34} "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 {¶ 35} "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 {¶ 36} "(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
 {¶ 37} "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 {¶ 38} "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."
 {¶ 39} Appellant herein particularly maintains that the court failed to take into account appellee's past failure to stay current with his child support obligation (see R.C. 3109.04(F)(1)(g)) and evidence pertaining to the children's interaction and interrelationship with her and her former mother-in-law, who functioned in a "grandmother" role (see R.C. 3109.04(F)(1)(c)). Appellant's Brief at 15-16.
 {¶ 40} We first note that there is no requirement that a trial court separately address each factor enumerated in R.C. 3109.04. In reHenthorn, Belmont App. No. 00-BA-37, 2001-Ohio-3459. Absent evidence to the contrary, an appellate court will presume the trial court considered all of the relevant "best interest" factors listed in R.C.3109.04(F)(1). Id., citing Evans v. Evans (1995), 106 Ohio App.3d 673,677. In the case sub judice, appellant contended appellee was in arrears on his child support obligations. Tr. VI at 23-24. Appellant also presented evidence that she had positive interaction with the children and that they were bonded to her and to each other. The children also maintained a relationship with appellant's former mother-in-law. Tr. IV at 503; GAL Testimony at 351. However, because custody issues are some of the most difficult and agonizing decisions a trial judge must make, he or she must have wide latitude in considering all the evidence.Davis v. Flickinger (1997), 77 Ohio St.3d 415, 418, 674 N.E.2d 1159. Accordingly, as an appellate court, we review a trial court's decision allocating parental rights and responsibilities under a standard of review of abuse of discretion. Miller, supra.
 {¶ 41} The record in the case sub judice reveals that the magistrate heard lengthy testimony by a number of witnesses during the various days of testimony. It was consistently noted that Jala is a bright and talkative child, while Jadon has developmental delays and communication problems, leading to much contention between the parties over his medical treatments. The court heard, inter alia, testimony from Connie Porter, a supervisor at the Stark County Department of Job and Family Services, who recounted the department's investigation into appellant's claims of sexual abuse perpetrated by appellee against Jala. Tr. III at 181, et seq. The investigation concluded that no sexual abuse had occurred. Id. Porter added her assessment that appellant's allegations were not sincere, particularly after appellant failed to quickly follow-up with psychologist Dr. Robin Tener as suggested. Tr. III at 185-199.
 {¶ 42} The guardian ad litem ("GAL"), Susan Burns, Esq., also took the stand. She had been involved in the case as early as 2001. In April of that year she sent a letter to each party's attorney on an issue that repeatedly surfaced during the proceedings sub judice: appellant's failure to inform appellee about matters affecting Jadon and Jala, particularly medical and educational matters. Tr. III at 277, et seq. Burns' report concluded that appellant spent more time with Jala than Jadon, and that Jala's bedroom was nicely decorated while Jadon's was sparse. Tr. III at 284. Burns was also concerned that Jadon continued sleeping in a crib at five years of age. Tr.III at 287. She was troubled by appellant's lack of cooperation with her and appellant's tendency to answer questions "cyclically." Tr. III at 302, 327. Burns also recounted an incident where appellant had neglected to tell appellee about a new food allergy discovered concerning Jadon. Tr. III at 319. Jala also told Burns that her mom hated her dad. Tr. III at 289. The final GAL recommendation was that custody should be awarded to appellee. Tr. III at 360.
 {¶ 43} Dr. Robin Tener completed an evaluation of appellant, appellee, appellee's wife, and Jala. Tener continued to have concerns that appellant was not going to cooperate on informing appellee of medical and school events. Tr. VIII at 34. Tener opined that Jala had not been the victim of sexual abuse, despite appellant's claims. Tr. VIII at 46. Tener also suggested that appellant repeatedly takes Jadon for medical treatments because "she's wanting to hear something from somebody or have a particular attitude direction that she feels is the one she wants to have taken." Tr. VIII at 113. She recommended that the court consider awarding full custody to appellee, with restricted visitation, if appellant continued her efforts to impede parental companionship or otherwise create anxiety for the children toward appellee. Tr. VIII at 64.
 {¶ 44} Appellant, called by appellee's counsel as if on cross-examination, disputed many of the concerns raised by appellee, specifically claiming both the GAL's and Dr. Tener's reports were incorrect, mistaken, or false at a number of points. Tr. I at 15-16, 35-36. Appellant also testified during her portion of the case. Tr. VII at 6, et seq. Appellant also called Dr. Linda Sklar, principal at the twins' school, who felt appellant was an "excellent mother," but who recounted that appellant had indeed instructed the school to notify her if appellee ever came on campus. Tr. IV at 503, 517. The court additionally heard from Dr. Patricia Millsaps, a child psychologist who had treated Jala. Tr. IV at 524, et seq. The court also interviewed Jala on the record. Tr. VIII at 151, et seq.
 {¶ 45} In addressing these arduous decisions in the arena of parental rights and responsibilities, we frequently emphasize that in proceedings involving the custody and welfare of children, the power of the trial court to exercise discretion is peculiarly important. Thompson v.Thompson (1987), 31 Ohio App.3d 254, 258, 511 N.E.2d 412, citingTrickey v. Trickey (1952), 158 Ohio St. 9, 13, 106 N.E.2d 772. "These types of cases present some of the most difficult and heart wrenching issues that courts are called to decide." Putnam v. Putnam, Washington App. No. 00CA32, 2001-Ohio-2471, Abele, P. J., concurring. Furthermore, the trier of fact is in a far better position to observe the witnesses' demeanor and weigh their credibility. See State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212.
 {¶ 46} Upon review, we conclude appellate reversal under the facts and circumstances presented would not be warranted on this issue against the magistrate who observed the evidentiary proceedings firsthand and the trial judge who originally reviewed the subsequent objections.
 {¶ 47} Appellant's Third Assignment of Error is overruled.
 II., IV., V. {¶ 48} In her Second, Fourth, and Fifth Assignments of Error, appellant raises various issues pertaining to evidence and witnesses in the case sub judice. Nonetheless, our review of appellant's objections to the decision of the magistrate reveals that none of these issues were therein raised. As we noted in our analysis of appellant's First Assignment of Error, Civ.R. 53(D)(3)(b)(iv) provides that a party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule. Stamatakis, supra.
 {¶ 49} We find the cited evidentiary arguments waived for purposes of appeal. Appellant's Second, Fourth, and Fifth Assignments of Error are therefore overruled.
 {¶ 50} For the reasons stated in the foregoing opinion, the decision of the Court of Common Pleas, Juvenile Division, Stark County, Ohio, is hereby affirmed.
By: Wise, P. J. Gwin, J., and Hoffman, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Juvenile Division, Stark County, Ohio, is affirmed.
Costs to appellant.
[1] Appellee urges that we dismiss the present appeal as untimely, contending appellant filed her notice of appeal thirty-one days after the judgment entry under appeal. See App.R. 4. However, the trial court's docket sheet does not reflect when or how the January 17, 2006 judgment entry was served on the parties. See Civ.R. 58(B). We will therefore proceed to the merits in this appeal. See, e.g., In reMills, Richland App. No. 01 CA 96, 2002-Ohio-2503.
[2] The captioning of appellant's assigned error incorrectly ties "R.C. 3109.049" (sic) with the "change of circumstances" requirement; we will proceed in our analysis under the R.C. 3104.09(F)(1) best interest factors.