[Cite as *Littleton v. Littleton*, 2019-Ohio-2309.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| LISA LITTLETON | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| ROY A. LITTLETON | : | Case No. 18-CA-29 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:        Appeal from the Fairfield County
                                Court of Common Pleas, Domestic
                                Relations Division, Case No. 14 DR
                                2011

JUDGMENT:                       Affirmed

DATE OF JUDGMENT:               June 10, 2019

APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

BRIAN C. BURRIER                        ALAN P. FRIEDMAN
Gerrity and Burrier, Ltd.               7110 E. Livingston Avenue
400 South Fifth Street, Suite 302       Reynoldsburg, Ohio 43068
Columbus, Ohio 43215

                                        KATHRYN R. GUGLE
                                        1900 Polaris Pkwy, Suite 450
                                        Columbus, Ohio 43240

*Baldwin, J.*

{¶1} Roy A. Littleton appeals the decision of the Fairfield County Court of Common Pleas, Domestic Relations Division, imputing income to him in the amount of $21,000.00 annually, awarding him $6000.00 per month in spousal support and refusing to include Appellee's reimbursed expenses in her income for purposes of calculating spousal support. Appellee is Lisa Littleton.

## STATEMENT OF FACTS AND THE CASE

{¶2} The parties were married in 1991 and, after 22 years of marriage, determined that they were incompatible. The basis for the divorce was uncontested, and the division of property was successfully completed. The Appellant was unsatisfied with the Court's award of $6000.00 per month for spousal support, citing his inability to work and Appellee's high income as the basis for his argument that he was entitled to $13,000.00 per month. Appellant argued the trial court abused its discretion by refusing to include reimbursed expenses in Appellee's income and that it did not consider all of the circumstances when arriving at the figure of $6000.00 per month, but the most hotly contested issue in this case was Appellant's employability.

{¶3} Appellant and Appellee married in 1991 and never had children. Appellant worked only minimally outside the home while Appellee attended school and received a degree. Appellee's career went very well, and though she works only on contract, her average salary for the five years prior to the divorce was nearly $200,000.00. While it is not clear from the record when the parties made the decision, it is clear that they agreed that Appellant would remain home while Appellee continued to build her reputation and career. Appellant admitted he and Appellee mutually agreed he would not work so they

could travel freely without any concern about accommodating his work schedule. Appellant accepted responsibility of keeping the family home in order and successfully completed most household tasks.

{¶4} This arrangement worked well for several years. They traveled extensively and achieved their goal of visiting all fifty states. They traveled to the United Kingdom and the Bahamas and enjoyed cruises together. Appellant began distilling alcohol (moonshine) as a hobby and attempted to start businesses that ultimately were not successful. Even after it appeared the marriage was deteriorating, Appellant continued to travel, completing motorcycle trips to Myrtle Beach and across a large part of the country. Appellant also continued to drive to Kentucky on a monthly basis to care for his Uncle.

{¶5} Appellee worked as an information technology specialist in the healthcare industry, assisting health care facilities with the installation of new and updated systems. She worked with the client to install the system and spent a great deal of time and effort when the software was placed into active use or "went live" as Appellee described. Appellee's employment required that she travel out of state and remain for several days during the week. She would stay in a hotel or apartment at the site during the week and spend her weekends at home, returning to the job site every week until the work was complete. Appellee incurred expenses for lodging, food, fuel and other necessities while completing her contract. Subject to the limitations of the contract, she would submit the expenses to her employer and would be reimbursed.

{¶6} Appellee was employed on a contract basis, but was not self-employed, and she would experience periods of unemployment, some as long as ten weeks between

contracts.   She set aside a portion of her income to provide for those periods of unemployment, so the couple did not suffer from her lack of employment.   She had been fortunate in the years immediately prior to the divorce as her income was relatively steady and not negatively affected by the uncertainty regarding her contracts.

{¶7}   Appellant's grandmother passed away in 1992, and Appellant suffered emotionally.   Jewell Littleton, his mother, described his symptoms as anxiety that prevented him from doing anything.   He sought treatment and was diagnosed as suffering from depression by Dr. Kasour.   He did not continue to see Dr. Kasour or any other mental health professional for his emotional trouble, but did receive medication for depression from a general practitioner, Christopher Nickison, M.D.

{¶8}   Though diagnosed with depression, the record indicates that Appellant was coping with his mental illness from the date of the initial illness to the fracturing of the marriage.   He was a part of at least two business ventures, distilled moonshine and traveled extensively, both with and without Appellee, and kept the home in order. Appellant did experience a number of medical problems in the years prior to the divorce and he continues to treat for those issues, but the record does not reflect that the problems rendered him a housebound invalid.

{¶9}   Appellant became concerned about what he perceived as a strain in his relationship with Appellee, leading him to search through Appellees email and discover, in January 2014, emails that he interpreted as evidence that Appellee was unfaithful. Appellee was in Florida at a job site at the time, so Appellant confronted her by telephone. He contends she admitted the affair, but Appellee denied any wrongdoing.   Appellant did concede that he expressed his anger by destroying Appellee's property, purportedly

during the phone call.  He broke all of the coffee mugs they had collected in their travels through the United States.  He tossed into the trash a trunk that belonged to Appellee's ancestors and traveled with them from Germany to the United States. The trunk contained quilts made by Appellee and her grandmother. He defaced an antique sewing chest and destroyed Appellee's handmade Christmas ornaments.  He destroyed handmade bookshelves, photographs and old books Appellee had collected, and put his foot through a wide screen television, purportedly while berating the Appellee over the phone.  He disposed of winter coats, boots and broke a watch Appellee had received as a gift from her employer.  Appellant's claimed physical and emotional disabilities did not restrict this violent outburst.

{¶10} The medical records submitted to the trial court disclose a change in Appellant's emotional state concurrent with the crumbling of the relationship between the parties.  In December 2013, Appellant's family physician, Christopher Nickison, M.D. noted that Appellant's depression was chronic, but stable.  Some of the records prior to December 2013 refer to depression, but none describe it as severe or disabling.

{¶11} After the outburst of January 2014, Dr. Nickison's records reflect an increasing problem with depression.  In March 2014, Appellant reported that his depression was worse after discovering that Appellee was "having an affair."  During a visit on May 1, 2014 Appellant reported that the depression had been getting worse since mid-January, the date of the discovery of the alleged affair, and that his marriage was not doing well.  He refused a psychiatric referral at that time, but circumstances changed at the next visit.

**{¶12}** Appellee filed a complaint for divorce on May 29, 2014. It was served upon Appellant on June 2, 2014. On June 5, 2014 Appellant visited Dr. Nickison and complained of worsening depression. He complained of trouble sleeping, not being able to stay alone, feeling fearful and having trouble answering the phone. He disclosed that Appellee had filed for divorce and he was having a difficult time. Dr. Nickison recommended a psychiatric admission but Appellant rejected that recommendation. He was referred for psychological evaluation, and, on June 13, 2014 Appellant began treating with a psychiatrist, Angline Stergiou, M.D.

**{¶13}** His first visit with Dr. Stergiou occurred shortly after the divorce complaint was served upon Appellant and his emotional state was affected. He claimed to have problems with motivation and was unable to function. He reported that he had lost fifty pounds in the last few months, but Dr. Nickison's records show a loss of only thirty pounds since December 2013. He retained counsel and had his first consult with his attorney on June 17, 2014. At his next visit with Dr. Stergiou, ten days later, he reported that he was doing better and he had faith in his attorneys. Dr. Stergiou did note that he had improved. On October 16, 2014, just thirteen days after Appellee's deposition, Appellant reported to Dr. Stergiou that he was sleeping better and anxiety was less. He was appropriately processing things and was seen as stable by Dr. Stergiou.

**{¶14}** Appellant's condition took a turn for the worse after his deposition on December 13, 2014. On December 22, 2104, he reported to Dr. Stergiou that he had problems with mood, depression and motivation as well as concentration. He complained that his concentration was so impaired that he was unable to focus on driving to a particular destination. He canceled a cardiac procedure because he just could not get out

of bed.  During the next visit, on April 30, 2015, his mood was better and he was calmer. His depression was viewed as stable and, coincidentally, he had spent a long period of time with his trial counsel prior to this visit.

{¶15} The remaining three visits with Dr. Stergiou note continued depression and, on two of those visits, the source of the stress and depression was the impending divorce hearing.

{¶16} Dr. Stergiou records and testimony did not reflect testing for vocational ability, and her experience does not include evaluation patients for employability. She did provide an opinion that Appellant was rendered unemployable due to his psychological symptoms.

{¶17} Dr. David Lowenstein served as plaintiff's expert, completed a psychological evaluation of Appellant, and concluded that he could earn a minimal income despite his medical and emotional diagnoses:

> It is this examiner's professional opinion that Andy has gotten used to enjoying the life of being unemployed and a stay-at-home husband with many freedoms and few responsibilities, but now that his source of income has changed with Lisa requesting a divorce, he is frightened about what he can do next. Instead of having these fears and concerns that seemed to have over-exaggerated his mental health problems, he should be able to now focus on what he can do to maintain his life and become more independent and stable.

{¶18} Appellant offered the opinion of Dr. David Tannenbaum, and though he was very critical of Dr. Lowenstein's methodology and interpretation of the data, he made it clear that he did not examine Appellant. "The work is limited to critiquing [David Lowenstein's] report, not to evaluating [Appellant]." Dr. Tannenbaum was very critical of Dr. Lowenstein's work, suggesting that the work was an example of plagiarism and was unethical, but as noted above, he was not retained to provide a psychological evaluation of Appellant. He refused to do so, and when asked if Appellant was unable to do any type of work he responded:

Q. Is it your testimony he's unable to do any type of work?

A: I can't testify to that. I can critique a report. I can certainly respond to the Court's inquiry do I agree. But I don't know that Andy can or can't do any kind of work. That can't be my testimony based upon not having evaluated him and having not evaluated him for that purpose.

{¶19} Nevertheless, he did have an opinion regarding whether Appellant was employable: 'I'm not trying to be facetious, but the only way that anyone will know if Andy is employable is if Andy attempts to be employed, and then he does or doesn't make it, so to speak. There's no way they can know that."

{¶20} The only expert retained to offer an opinion regarding Appellant's ability to earn an income was Richard P. Oestreich, PhD, CRC. Dr. Oestreich is a vocational consultant and certified rehabilitation counselor. The parties agreed that his report would be admissible without his testimony.

{¶21} Dr. Oestreich reviewed Appellant's lifestyle and activities and concluded that despite his complaint about being unable to do anything he had an active lifestyle, drove to the exam and participated for an hour with no apparent discomfort. Coincidentally, Dr. Lowenstein made a similar observation noting that Appellant was able to complete a four or five hour session of interviewing and testing with no apparent problem. Appellant notes that Dr. Ostreich describes his medical and psychological complaints and states "[w]hether any of this prohibits work is for medical professionals to decide" but he concluded that he "has not seen anything concretely documented that precludes work of at least a sedentary nature."

{¶22} Dr. Oestreich decided that Appellant was capable of finding employment that would permit him to earn approximately $21,000.00 per year, and recommended a six month period to transition from being an unemployed person.

{¶23} The record does provide clear evidence that Appellant suffers physical an emotional disabilities, but the evidence is conflicting regarding the impact on Appellant's daily activities. His current psychiatrist and family physician contend he is unemployable due to restrictions imposed by his illnesses, yet he is clearly able to travel great distances, for extended periods of time, and care for a relative who lives in Kentucky on a monthly basis. He went on a fishing trip with his father and traveled to Georgia to watch spring training. He completed long distance trips on a motorcycle and though his medical providers contend that driving a motorcycle is an automatic process not indicative of any ability to be employed, Appellant viewed it as a serious challenge to his abilities that he successfully overcame. Prior to the divorce, but during his illness, he started businesses,

traveled, distilled alcohol, served as a leader for girl scouts, and, at least for a period of time, completed housekeeping chores.

**{¶24}** The trial of this matter took place on four days and upon completion, the magistrate concluded that Appellant was employable and imputed an income of $21,000.00 to Appellant. The magistrate refused to include reimbursed business expenses in Appellee's income and awarded spousal support in the amount of $6,000.00 per month to Appellant. Appellant filed objections to the magistrate's decision and the objections were overruled. Appellant filed a notice of appeal and submitted three assignments of error:

**{¶25}** "I. THE TRIAL COURT ABUSED ITS DISCRETION BY IMPUTING INCOME IN THE AMOUNT OF $21,000.00 A YEAR FROM A FULL-TIME JOB TO APPELLANT DESPITE APPELLANT'S EMPLOYMENT DISABILITIES."

**{¶26}** "II. THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO ATTRIBUTE NON-TAXABLE INCOME TO APPELLEE THAT SIGNIFICANTLY LOWERED APPELLEE'S LIVING EXPENSES."

**{¶27}** "III. THE TRIAL COURT'S AWARD OF SPOUSAL SUPPORT IN THE AMOUNT OF $6,000.00 PER MONTH TO APPELLANT WAS ARBITRARY, UNREASONABLE AND INAPPROPRIATE."

## STANDARD OF REVIEW

**{¶28}** Appellant's assignments of error focus upon the income of the parties and the calculation of spousal support, contending that the trial court abused its discretion in three separate ways resulting in an incorrect calculation of $6,000.00 per month indefinitely.

A trial court's decision concerning spousal support may only be altered if it constitutes an abuse of discretion. See *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67, 554 N.E.2d 83 (1990). An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore*, supra. Furthermore, as an appellate court, we are not the trier of fact. Our role is to determine whether there is relevant, competent, and credible evidence upon which the factfinder could base his or her judgment. *Tennant v. Martin–Auer*, 188 Ohio App.3d 768, 936 N.E.2d 1013, 2010–Ohio–3489, ¶ 16, citing *Cross Truck v. Jeffries,* 5th Dist. Stark No. CA–5758, 1982 WL 2911.

*Washek v. Washek,* 5th Dist. Fairfield No. 18 CA 22, 2019-Ohio-1504, ¶ 40.

## ANALYSIS

**{¶29}** Appellant addresses the bulk of his argument to his contention in the first assignment of error that he is unemployable and any finding to the contrary is an abuse of discretion.  He relies upon the statements of his psychiatrist, Angline Stergiou, M.D. and his family physician, Christopher Nickison, M.D. both of whom did state their belief that he was not employable.  And he minimizes the contrary testimony of the vocational expert, Dr. Oestreich and the psychologist, David Lowenstein by arguing that Dr. Oestreich deferred to the medical experts and that Dr. Lowenstein' s report was found unreliable by Dr. Tennant.

{¶30} The testimony and exhibits submitted at the trial were not consistent with the opinions of Appellant's medical experts. Dr. Stergiou and Dr. Nickison's conclude Appellant is not employable or totally disabled, yet he is capable of driving himself to Kentucky on a monthly basis to care for his uncle. He and Appellee traveled extensively prior to their separation and Appellant continued to travel after the break-down of the relationship. He went on a fishing trip with his father, traveled to spring training and rode a motorcycle to Myrtle Beach with a passenger. He took a lengthy cross country trip on a motorcycle consisting of hundreds of miles. Before the last day of the trial Appellant took a motorcycle trip to Wisconsin with a passenger on the motorcycle for the entire trip. Appellant's experts contended that operating a motorcycle requires very little focus as it is an automatic response, but Appellant's own testimony contradicts that conclusion. He had not ridden his motorcycle for two and one half years prior to this trip. He "put everything in motion that [he] could" and admitted "it was quite a challenge for me to mount all this." He was so concerned that the trip was too difficult that he took the title to the motorcycle with him in the event he was forced to sell the motorcycle and buy a plane ticket to return. While Appellee did assist with making reservations for hotels, Appellant was still apprehensive about the challenge and yet he succeeded in covering an average of four-hundred seventy miles per day during eighteen days of riding. Appellant recorded this achievement is his diary and obviously believed it was a significant achievement. We cannot fault the trial court for coming to the same conclusion.

{¶31} Appellant and his experts rely heavily on Appellant's psychological disability to support their contention he is unemployable. The primary support for the experts' conclusion is the information provided by Appellant. Neither Dr. Stergiou nor Dr. Nickison

describe any objective test that was administered to arrive at a diagnosis, but both rely upon the veracity, accuracy and insight of the Appellant and his ability to provide an accurate measure of his abilities. While Dr. Stergiou does not feel that the Appellant is malingering, he does have an incentive at this juncture to focus on his disabilities. The fact that he completed the cross-country motorcycle trip after concluding that he would likely not be able to finish it gave the trial court grounds to suspect that Appellant did not have an accurate perception of his capabilities. This incident of self-doubt is consistent with Dr. Lowenstein's conclusion that Appellant's view of his abilities and disabilities are inaccurate and that his current state of mind may be more closely related to the upheaval that he is experiencing as a result of the divorce proceedings.

**{¶32}** Both Dr. Stergiou and Dr. Nickison conclude that Appellant's emotional state renders him unemployable, but neither provide a clear explanation for the apparent inconsistency between that conclusion and what Dr. Stergiou describes as an "active lifestyle." The Appellant's experts suggest that operating a motorcycle can be an automatic activity requiring little focus or concentration, but that conclusion is refuted by Appellant's own concern about his ability to complete the trip and common experience. Operating any vehicle for long periods of time, as much as seven hundred miles in a day requires the driver to remain aware of the road conditions, speed, weather and others on the road. A motorcycle rider is taxed further by exposure to the elements and the requirement of maintaining balance. While short trips may be simple, an argument that travel of hundreds of miles in one day does not require stamina and concentration defies common sense.

{¶33} Neither of Appellant's experts claim to be experienced in vocational rehabilitation, another point that can be viewed as undermining their determination the Appellant is unemployable. Dr. Nickison conceded that he had not investigated employment opportunities for Appellant and that it was possible that vocational expert could find a job for him, and that people with Appellant's ailments can work, undermining his conclusion that Appellant would not be able to hold a job. Dr. Stergiou also acknowledged that persons with Appellant's diagnosis can work and function at a high level. The only vocational expert, Dr. Oestreich, concluded that Appellant is employable in a minimum wage position. And while Appellant's expert, Dr. Tannenbaum was not retained to express an opinion regarding Appellant's ability to hold a job, he suggested that we will not know if he can be employed until he attempts to be employed. While Dr. Oestreich may disagree with that conclusion, that comment weakens the opinions of Dr. Stergiou and Dr. Nickison that Appellant is unable to be employed in any context.

{¶34} Appellant's failure to seek employment prior to trial, during the two years this matter was pending, indirectly lends support to a conclusion that he is employable. Dr. Lowenstein notes that Appellant has grown accustom to life without financial responsibilities and Dr. Oestreich, after challenging Appellant for an explanation for his inability to find employment, concluded that he "had not seen anything concretely documented that precludes work of at least a sedentary nature." He also noted that Appellant's reported symptoms were inconsistent with his reported activities, suggesting that Appellant is more capable that he would like to admit. His failure to seek employment of any nature, or attempt to obtain a vocational evaluation from the Bureau of Vocational Rehabilitation as suggested by Dr. Lowenstein, between the date of the filing of the

divorce on May 29, 2014 and December 22, 2016, the last day of trial lends further support to Dr. Lowenstein's conclusion that it is not a physical or emotional disability that prevents him from being employed, but the sudden realization that he must become more self-sufficient.

**{¶35}** After reviewing the record, we find that the trial court did not abuse its discretion by imputing an income of $21,000.00 to Appellant as there is sufficient relevant, competent, credible evidence to support such a conclusion. The first assignment of error is denied.

**{¶36}** Appellant invests only a small portion of his argument on the second and third assignment of error, perhaps in recognition of their lesser significance in comparison with the first assignment. He offers no legal authority for either assertion, which suggests that the trial court's conclusion was not erroneous, but only objectionable to Appellant.

**{¶37}** In his second assignment of error, Appellant contends the trial court erred by failing to include reimbursed business expenses in the Appellee's gross income. First, we note that Appellant did not bring this specific objection to the attention of the trial court in his objections to the magistrate's decision. Pursuant to Civ.R. 53, objections to a magistrate's decision must be specific. *Stephens v. Bertin*, 5th Dist. Stark No. 2006 CA 00052, 2006-Ohio-6401, ¶ 25. Appellant did reference the expense reimbursements in paragraph 10 of his objections, but includes no assertion that the magistrate erred by failing to include those expenses in Appellant's income. For that reason, this assignment of error is not properly before us. However, because Appellant does reference the reimbursed expenses in his objections, describing them as income, we believe it appropriate to consider the merits in the interest of justice.

{¶38} Appellant asserts that the reimbursed expenses should be included as income because they reduce Appellee's living expenses, but he cites to no precedent or statute that supports his contention, leading this Court to conclude that no such support exists. Reimbursed business expenses can be included in "self-generated income" but only in the context of a determination of child support when it is demonstrated that Appellee received income from "self-employment, proprietorship of a business, joint ownership of a partnership or closely held corporation, and rents minus ordinary and necessary expenses incurred by the parent in generating the gross receipts." R.C. 3109.01(B)(19). The Appellee was described as an employee in the record and the issue is spousal, not child support, so this section is inapplicable.

{¶39} The reimbursed expenses received by Appellee are not labeled income by the Ohio Revised Code, any relevant precedent or any tax authority. The Magistrate considered this issue and concluded:

92. Plaintiff/Wife resides in Florida. Her current consulting assignment is in California. She travels back and forth most weeks. She pays for transportation including airfare, lodging, meals, fuel, and car rental out of pocket and is reimbursed within certain parameters by the client. She keeps these reimbursement funds separate from her earnings, and uses a separate credit card to pay her business expenses.

93. Defendant/Husband argues that these reimbursements should be included in Plaintiff/Wife's income. It is not income, but rather reimbursement for expenses, and therefore not included in her income.

{¶40} These payments are distinct from the fringe benefits described in *Merkel v. Merkel,* 51 Ohio App.3d 110, 112, 554 N.E.2d 1346 (1988) or *Morrow v. Becker*, 138 Ohio St.3d 11, 2013-Ohio-4542, 3 N.E.3d 144 (2013) where the courts found no distinction between providing what it described as a fringe benefit and the money to purchase the same. In *Morrow* the Appellant did not have his own vehicle or cell phone and relied upon the automobile and phone provided by his employer for personal use. If it had not been provided by the employer, Appellant would be compelled to make the expenditure for his own use. *Id.* at ¶ 15. In *Merkel,* housing was provided free of charge and appellant therein did not provide his own housing. In the case at bar, Appellee is reimbursed for business related expenses incurred as a result of her employment, only if she submits a request, subject to parameters established by the employer. The fringe benefits in *Morrow* and *Merkel* were provided by the employer without any obligation by the employee to document the expense or file a request and are distinctly different from the expense reimbursements Appellee received.

{¶41} For those reasons we hold the trial court did not abuse its discretion in failing to include them in Appellee's income and deny Appellant's second assignment of error

{¶42} In his third assignment of error, Appellant contends the trial court erred in awarding only $6000.00 per month spousal support for an indefinite period, first repeating his contention that he is unemployable, that the Magistrate failed to consider portions of R.C. 3105.18 and  because the rational for the calculation is not described in the trial court's findings. He also contends the Magistrate overlooked the debt service of $1579

per month combined with the monthly expenses of $5953.00 per month as well as the need to obtain health insurance.

**{¶43}** We have often reiterated that while R.C. 3105.18(C)(1), does contain fourteen factors the trial court must consider, if the court does not specifically address each factor in its order, a reviewing court will presume each factor was considered, absent evidence to the contrary. *Carroll v. Carroll*, 5th Dist. Delaware No. 2004–CAF–05035, 2004–Ohio–6710, ¶ 28, quoting *Watkins v. Watkins,* 5th Dist. Muskingum No. CT 2001–0066, 2002–Ohio–4237, ¶ 21 (additional citations omitted). In this instance, however, the magistrate devoted sixteen pages of analysis to the spousal support question, walking through all of the applicable R.C. 3105.18(C)(1) considerations.

**{¶44}** The Magistrate listed a number of facts in support of her conclusion over sixteen pages and considered all of the requirements of R.C. 3105.18. Debt was considered in a prior section of the Decision and is not an express element to be considered under R.C. 3105.18, so the lack of any mention in the section addressing spousal support is not abuse of discretion.  The Magistrate addressed health insurance by requiring each party to be responsible for their own coverage, and ordered Appellee to cooperate as needed to insure Appellant was eligible for COBRA at her employer if he should so choose.

**{¶45}** Appellant's claimed monthly expenses of $5,953.50 was taken directly from his affidavit filed with the trial court on October 19, 2015 which includes $1,245.00 per month for health insurance, so that amount was clearly included in the magistrate's analysis and need not be duplicated.   Appellant complains of the trial court's failure to consider Exhibit III, the "fin plan" but that document was only briefly identified by Appellant

during his testimony.  The source and significance of the information is not clear and facially it appears inaccurate as it attributes $144,000.00 to Appellee as self-employment income, a figure not supported in the record as Appellee is not self-employed. The trial court did not abuse its discretion by not considering this document as its probative value and reliability are minimal.

**{¶46}** The trial court reviewed all of the elements of R.C. 3105.18 and the evidence upon which it relied to conclude that Appellee would be obligated to pay Appellant $6000.00 per month, covering all his monthly expenses of $5,953.00.  We note a contradiction between the expenses claimed in Appellant's affidavit and his testimony could support a significantly lower amount.   Appellant claims a monthly fuel expense of five-hundred dollars, a cost suggesting regular daily travel, yet he maintains his typical day consists of getting out of bed upstairs, going downstairs, and laying on the couch. He claims a health insurance expense of $1254.00 per month as part of the $5,953.00, but during his testimony, he described a health insurance plan with a premium several hundred dollars lower.   The Magistrate noted that Appellant's "groceries and meals out numbers are inflated based upon the checking account statements."

**{¶47}** The trial court did not challenge the Appellant's claimed expenses, but the inconsistencies in the evidence could support a conclusion that the Appellant's expenses were significantly less than what was represented in affidavit and that the award of $6,000.00 per month was more than sufficient to support Appellant.

**{¶48}** We hold that the trial court's analysis and award was based upon substantial, credible evidence and was not an abuse of discretion.   Appellant's third assignment of error is denied.

**{¶49}** The decision of the Fairfield County Court of Common Pleas, Domestic Relations Division is affirmed.


By: Baldwin, J.

Hoffman, P.J. and

Wise, John, J. concur.